# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-24-96-RAW |
| ) | |
| RHETT AUBREY WALKER, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Defendant Rhett Aubrey Walker was indicted for child abuse in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153 & 21 Okla. Stat. § 843.5(A), in connection with injuries sustained by his child, A.W. ("Victim"), including bone fractures and a torn frenulum. He urges the Court to exclude the proposed testimony of Dr. Michael Baxter, D.O., the child abuse expert identified by the Government, on the grounds that (i) the Government failed to comply with the notice requirements of Fed. R. Crim. P. 16 and (ii) his opinions do not meet the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). *See generally* Fed. R. Evid. 702. The Court referred Defendant's Motion to Strike, or in the Alternative, Objection to Government's Notice to the Court and Supplemental Notice of Intent to Offer Expert Witness [Docket No. 80] and Motion to Exclude Expert Testimony of Dr. Michael Baxter Pursuant to Fed. R. Evid. 702 and Brief in Support [Docket No. 81] to the undersigned Magistrate Judge for a hearing and final disposition pursuant to 28 U.S.C. § 636(b)(1) [Docket No. 84].

The undersigned Magistrate Judge conducted an evidentiary hearing on Wednesday, January 22, 2025 [Docket No. 96], and Dr. Baxter testified at the hearing. The Court finds that Defendant's Motion to Strike, or in the Alternative, Objection to Government's Notice to the Court and Supplemental Notice of Intent to Offer Expert Witness [Docket No. 80] and Defendant's Motion to Exclude Expert Testimony of Dr. Michael Baxter Pursuant to Fed. R. Evid. 702 and Brief in Support [Docket No. 81] should be DENIED for the reasons set forth below.

## I.    EXPERT NOTICE REQUIREMENTS

Under Fed. R. Crim. P. 16(a)(1)(G) regarding expert witnesses,

(i) Duty to Disclose. At the defendant's request, the government must disclose to the defendant, in writing, the information required by (iii) for any testimony that the government intends to use at trial under Federal Rule of Evidence 702, 703, or 705 during its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C). If the government requests discovery under the second bullet point in (b)(1)(C)(i) and the defendant complies, the government must, at the defendant's request, disclose to the defendant, in writing, the information required by (iii) for testimony that the government intends to use at trial under Federal Rule of Evidence 702, 703, or 705 on the issue of the defendant's mental condition.

(ii) Time to Disclose. The court, by order or local rule, must set a time for the government to make its disclosures. The time must be sufficiently before trial to provide a fair opportunity for the defendant to meet the government's evidence.

(iii) Contents of the Disclosure. The disclosure for each expert witness must contain:

•      a complete statement of all opinions that the government will elicit from the witness in its case- in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C);

•      the bases and reasons for them;

•      the witness's qualifications, including a list of all publications authored in the previous 10 years; and

- a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

Additionally, "[t]he government must supplement or correct its disclosures in accordance with," Fed. R. Crim. P. 16(a)(1)(G)(vi), the continuing duty to disclose found at Fed. R. Crim. P. 16(c).

## II.    MOTION TO STRIKE (Docket No. 80)

The Government filed its original Notice of Intent to Offer Expert Witness [Docket No. 25] on July 11, 2024. The Government indicated that Dr. Michael Baxter, D.O., would testify to all aspects of his knowledge, training, and experience in the area of child physical abuse and child physical abuse examinations, as well as his involvement in this specific case, "in particular:

    a. His observation and examination of the victim in this case;
    b. His review of the records, reports, photographs, medical records, medical history, etc. regarding the victim;
    c. His knowledge regarding the victim's injuries; and
    d. His medical diagnosis of child physical abuse."

Docket No. 25, pp. 1-2. Defendant later learned that Victim had potentially been diagnosed with Ehlers-Danlos Syndrome ("EDS") and Osteogenesis Imperfecta ("OI") by two physicians, Dr. Michael Holick and Dr. David N. Chorley. The Notice did not include any opinions as to EDS or OI on behalf of Dr. Baxter. Both EDS and OI have been or are considered possible "mimics," or impairments that might be mistaken for child abuse, that may or may not be ruled out as alternative findings to a diagnosis of child abuse in relation to Victim. On November 26, 2024, Defendant provided a Fed. R. Crim. P. 16 Notice of Expert testimony, identifying Dr. Chorley as an expert, from whom he expected to elicit

testimony regarding, *inter alia*, his medical diagnoses of OI and EDS [Docket No. 47].[1] At the hearing, however, Defendant acknowledged that a genetic test has been done that rules out OI, and that OI will not be raised as a defense at trial. *See* Docket No. 97, p. 92, ln. 5-13.

The Government provided an additional medical record of Victim (a six-page medical report prepared by Dr. Michael Kayser, D.O., dated January 2, 2024) to Defendant on December 18, 2024. *See* Docket No. 80, Ex. 3. The Government indicated that Dr. Baxter had found this record and was prepared to testify to its contents and that he believed it to be inculpatory.[2] Despite requests for clarification of the Government's Notice both prior to a following the production of this document, the Government did not provide any supplementation, nor a complete list of records Dr. Baxter reviewed despite the fact he clearly continued to research this case after the original Notice. After some back and forth with the Government, Defendant brought this to the Court's attention at the Pretrial Conference held on December 19, 2024 [Docket Nos. 67, 70]. At that time, the Court directed the Government to update its expert notice. [Docket No. 70].

---

[1] Defendant was unable to fully comply with Rule 16 because Dr. Chorley refused to cooperate to communicate with Defense Counsel, but nevertheless the expected testimony of Dr. Chorley's knowledge base, as well as his examination and diagnosis of Victim. Dr. Chorley's qualifications and reliability are not before the Court at this time.

[2] Dr. Kayser saw Victim on January 2, 2024, accompanied by her mother and paternal grandmother. Dr. Kayser's report notes in a discussion of EDS, *inter alia*, that Victim was not old enough to be evaluated for clinical hypermobility, and that hEDS does not typically overlap with clinical features of OI and multiple fractures at different stages of healing in a 2-month-old is not consistent with hEDS. Docket No. 80, Ex. 3, pp. 1, 6.

The Government filed Government's Notice to the Court and Supplemental Notice of Intent to Offer Expert Witness [Docket No. 71] on December 23, 2024, which contained no additional supplementation and instead consisted of arguments as to why the original Notice was sufficient.   While there does appear to be additional information, the "Supplement" contains no sections setting forth what specific supplemental notice has been provided.   Rather, the Government contends that their Notice is similar to others that have been routinely upheld.   Of the two cited cases, the proposed expert in one was specifically *not* offering a diagnosis, in contrast to Dr. Baxter.   *See* Case No. CR-22-19-JDR, Docket No. 79, p. 2, ¶ vii ("Dr. Beeson will *not* testify that she diagnosed the victim with abuse.") (emphasis added).   The other report, while closer to the disclosure here, nevertheless provided a more fulsome description, including citation to the Doctor's own medical records.   *See* Docket No. CR-21-151-TDD, Docket No. 164, pp. 2-3, ¶ (j) ("Dr. Conway treated the victim in this case and reviewed records related to her medical care. She will give an opinion relating to the facts of this case, opinions regarding the credibility of the examinations performed on the victim, and the accuracy of the reports in this case. It is anticipated that Dr. Conway will testify that she medically diagnosed the victim as having suffered child abuse and neglect.").[3]   While the Government routinely provides Notice

---

[3] There, the Court further noted that if a Rule 16 violation existed, Defendant was not prejudiced and therefore no sanction was needed. *See United States v. Menees*, 2023 WL 127032, at *2 n.1 (E.D. Okla. Jan. 6, 2023).

nearly identical to the one provided in this case,[4] the Court declines to find such Notice sufficient for all cases.

Defendant therefore moves to strike the Notice and Supplement as insufficient and to exclude Dr. Baxter's testimony [Docket No. 80]. Defendant contends the Notice is not a "complete statement" of all opinions but is instead an identification of generic topics. Additionally, he contends even the Supplement does not identify the actual opinions that Dr. Baxter would testify to with regard to EDS and OI. Further, he notes the Supplement is not signed by Dr. Baxter and does not identify any additional opinions he may offer at trial, despite the Government's more recent assertion that Dr. Baxter considered both EDS and OI as part of his differential diagnosis of Victim from February 2023. Defendant argues that, instead of a proper supplement, the Government just directed his attention to six articles, that had been in a list of 46 total articles, then asserted that the original Notice was sufficient because those articles discussed mimics including EDS and OI. The Court notes none of the titles refer to a differential diagnosis or purport to contain a detailed discussion of general mimics, must less EDS or OI. At the hearing, Defense counsel noted some difficulty even obtaining these articles as many were behind a paywall or subscription service. The Government's response is that they are not required to "spoon feed to the Defendant the information it intends to elicit at trial." Docket No. 86, p. 5, n.1. As to Dr.

---

[4] See, *e.g.*, Case No. CR-23-153-RAW, *United States v. Bowen*, Docket No. 23. *But see* Case No. 21-332-RAW, *United States v. Keys*, Docket No. 104.

Kayser's report from January 2024, which was produced in December 2024, Defendant contends he is unaware of the opinions Dr. Baxter will testify to therefrom.

The Government asserts that they have consistently provided the above-noted four particular subjects on which Dr. Baxter will testify.  While the Supplemental Notice has no section setting forth the specific "Supplement" in terms of Rule 16, the government cites opinions and evidence not previously identified by the Government.  For instance, the Supplemental Notice explains that Dr. Baxter did a differential diagnosis and considered mimics including EDS and OI before ruling them out to reach his ultimate diagnosis of abuse.  The Government cites Dr. Baxter's CV, which lists scholarly articles he wrote on child abuse mimics, as well as lectures and presentations on the articles, and the six scholarly articles previously cited in the original Notice.  Having reviewed the titles of Dr. Baxter's articles the Government cites in the CV, the Court notes that at least three of the four identified presentations were in the context of Pediatric Sexual Assault Nurse Examiner ("SANE") training, and one non-peer-reviewed publication appears to discuss an entirely different mimic, titled "Hench Schonlein Purpura as a Physical Abuse Mimic." *See* Docket No. 25, Ex. 1, p. 5, ¶ 1; p. 6, ¶ 1; p. 7, ¶ 17; pp. 8-11, ¶¶ 11, 19, 36, 44.  It does appear Dr. Baxter gave a 90-minute lecture to first year Physician Assistant students "to introduce them to child maltreatment including child abuse mimics."  *Id.*, p. 15 (Spring 2020).  The Government states, "As evidenced in the medical records, Dr. Baxter went through a differential diagnosis and considered mimics including OI and ED before ruling those out and diagnosing abuse."  Docket No. 71, p. 3.  The Government cites to no medical

record, even after being pressed by the Court, that identifies where this occurred. At best, the AUSA pointed to an email Dr. Baxter wrote to Oklahoma Department of Human Services discounting Dr. Holick's opinion. Dr. Baxter agreed at the hearing that his examination notes do not contain a differential diagnosis, but he testified that he conducted one. The Government appears to assert that the Defendant was supposed to know this, and specific relevant impairments that were ruled out, despite the fact that Dr. Baxter admittedly did not document a differential diagnosis.

"Under Federal Rule of Criminal Procedure 16, the Government must provide a criminal defendant with a written summary of any expert testimony it intends to useThe notice must provide a complete statement of all opinions that the Government will elicit from the expert, as well as the basis and reason for those opinions." *United States v. Mcgee*, 2024 WL 217848, at *9 (E.D. Okla. Jan. 19, 2024) (citing Fed. R. Crim. P. 16(a)(1)(G)). "Rule 16 is designed to give opposing counsel notice that expert testimony will be presented, permitting 'more complete pretrial preparation' by the opposing side, such as lining up an opposing expert, preparing for cross-examination, or challenging admissibility on *Daubert* or other grounds." *United States v. Nacchio*, 519 F.3d 1140, 1151 (10th Cir. 2008), *vacated in part on reh'g en banc*, 555 F.3d 1234 (10th Cir. 2009) (quoting Fed. R. Crim. P. 16 advisory committee's note to 1993 amendment); *see also United States v. McCluskey*, 954 F.Supp.2d 1224, 1231 (D. N.M. 2013) ("Rule 16 disclosure is designed to give the opposing party notice, permitting preparation for cross-examination and presentation of opposing experts."). Furthermore, "the Court notes the relevance of child

abuse expert testimony in a child abuse case is clear." *United States v. Woods*, 596 F. Supp. 3d 1271, 1274 (N.D. Okla. 2022). It is possible that the Notice would have been sufficient had not Defendant put the Government on notice, through his expert disclosures, that EDS and OI were at issue. The Government's intent to use Dr. Baxter as an expert on these topics, even if only in rebuttal, should have prompted a Supplemental Notice. *See* Fed. R. Crim. P. 16(a)(1)(G)(i) & (vi).

The parties have also engaged in extensive arguments regarding the December 2024 disclosure of Dr. Kayser's medical record which Dr. Baxter found in preparing for trial, and which the Government produced on December 18. The relevant meaning of this disclosure for the present motion is that the Government did not update its Rule 16 Notice as a result of this disclosure despite clear indications Dr. Baxter intended to testify about it; indeed, the Government has repeatedly refused to do so when requested by Defendant Counsel and when ordered by the Court. As above, the Government contends that the Notice was sufficient because six of forty-six identified supporting scholarly articles specifically include consideration of mimics such as OI and EDS. It is clear, however, that the four corners of the original Notice include mention of neither, and nothing about the Supplement explains the connection. *See, e.g.*, *United States v. Ferguson*, 2007 WL 4539646, at *2 (D. Conn. Dec. 14, 2007) ("The defendants supplemented their initial minimal disclosures by providing the government with a list of sources from which the experts drew their opinions. However, these lists included numerous broad-based sources for each expert and did not specify which sources the expert used to reach the different

opinions identified. Absent information that links specific sources to each of the experts' opinions, the government does not have the type of information envisioned by Rule 16(b)(1)(C) with which to prepare for cross-examining the experts.").

Important, however, is Dr. Baxter's testimony at the hearing. Dr. Baxter testified that a differential diagnosis is important in the field of child abuse pediatrics because it goes to obtaining the most accurate diagnosis for the child and family. He testified that he typically starts with a "rather wide differential," then narrows it based on records provided and any test results including x-rays. Dr. Baxter also testified that the differential diagnosis was important for ruling out "mimics," or impairments that might look like child abuse, because the goal is a "true positive" or correct diagnosis. In cases where potential mimics are involved, Dr. Baxter testified that mimics would be in his differential diagnosis. *See* Hr'g Tr., Docket No. 97, pp. 15-20. Dr. Baxter's medical record contains no differential diagnosis, nor does the Rule 16 Notice put Defendant on notice that he would testify as an expert with regard to a differential diagnosis involving either EDS or OI. *See, e.g.*, *Redmond v. City of E. Point, Ga.*, 2004 WL 6060552, at *9 (N.D. Ga. Mar. 29, 2004) ("Although Dr. Davis claims in his deposition that, in evaluating plaintiff, he used the concept of differential diagnosis, there is no evidence of such in his report."). He nevertheless testified that he conducted one in this case, and specifically discussed EDS and OI in the context of Victim's presentation and injuries.

The Court is mindful of Dr. Baxter's testimony that a differential diagnosis of child abuse can involve considering numerous other diagnoses and that listing them all would

make the medical record unwieldy. *Id.* ("The alleged requirement that Dr. Davis explain in his report why each of these diagnoses was inapplicable would be onerous to him and confusing to the reader."). The problem here is that, once Defendant's Rule 16 Expert Notice put the Government on notice that OI and EDS were specific topics, *see* Docket No. 47, the Government made no move to Supplement to place Defendant on Notice that Dr. Baxter could and would opine as to these impairments and continues to insist they should not have to. Defendant correctly points out the difficulty in knowing what a physician has ruled out when their record contains no such information. The Government contends they are not required to provide a verbatim recitation of the testimony Dr. Baxter will provide. Moreover, the Government continues to refer back to the discovery previously provided in this case.

On its face, neither the Notice nor the Supplement specifically delineate that Dr. Baxter will opine on his process of differential diagnosis, or specifically how he considered EDS or OI. Even at the hearing, the Government specifically limited its questioning of Dr. Baxter to his qualifications and experience and attempted to object when Defendant began asking questions specific to this case. However, because Dr. Baxter testified as to his opinions and considerations specific to this case, including the medical records he reviewed and a differential diagnosis of Victim as to EDS and OI, the Court finds Defendant is not unfairly prejudiced. *See, e.g.*, *United States v. Riego*, 2022 WL 2355449, at *2 (D. N.M. June 30, 2022) ("The notice and subsequent testimony provides enough for counsel 'to frame a Daubert motion (or other motion in limine), to prepare for cross-examination, and

to allow a possible counter-expert to meet the purpose of the case-in-chief testimony.'") (quoting *United States v. Cerna*, 2010 WL 2347406 (N.D. Cal. June 8, 2010) (citing the Advisory Committee Note to the 1993 Amendment)); *United States v. Pena*, 2022 WL 1175184, at *5 (D. N.M. Apr. 20, 2022) ("To the extent that Mr. Pena was prejudiced by the government's Notice, any such prejudice has been alleviated because the Court granted a *Daubert* hearing and ordered the government to supplement its Notice. Accordingly, the Court finds that the government's Notice—as supplemented by its reply—is sufficiently specific. The Court will not exclude expert testimony on this basis.") (internal citations omitted)). The testimony will not be excluded on the basis that the notice violated Rule 16, in light of Dr. Baxter's testimony at the hearing on January 22, 2025. *See United States v. Garcia*, 2024 WL 5056419, at *2 (D. N.M. Dec. 10, 2024) ("[A]ny prejudice from the lack of more specificity in the Notice was cured at the hearing. The purposes of Rule 16 include minimizing surprise from unexpected expert testimony and allowing a party to prepare for cross-examination and presentation of opposing experts.").

### III.    LEGAL STANDARD UNDER *DAUBERT* & FRE 702

A witness who is qualified as an expert by knowledge, skills, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Each party has the burden to show the evidence they are propounding is admissible under Rule 702.  *See, e. g., United States v. Nacchio*, 555 F.3d 1234, 1251 (10th Cir. 2009) (en banc).  However, the Court must consider the "'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to 'opinion' testimony."  *Daubert*, 509 U.S. at 588 (quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988)).  "Courts should, under the Federal Rules of Evidence, liberally admit expert testimony, and the trial court has broad discretion in deciding whether to admit or exclude expert testimony."  *United States v. DeLeon*, 2021 WL 4909981, at *15 (D. N.M. Oct. 21, 2021) (citations omitted).  And the "fields of knowledge which may be drawn upon are not limited merely to the 'scientific' and 'technical' but extend to all 'specialized' knowledge.[] Thus, within the scope of the rule are not only experts in the strictest sense of the word, *e.g.*, physicians, physicist, and architects, but also the large group sometimes called 'skilled' witnesses[.]"  Advisory Committee Notes to Fed. R. Evid. 702, 1972 Proposed Rules.  "And where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question . . . the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'"  *Kumho Tire*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592).

"Before considering whether an expert's testimony is reliable or helpful to the jury, 'the district court generally must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion.'" *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1136 (10th Cir. 2014) (*quoting Nacchio*, 555 F.3d

-13-

at 1241) (quoting Fed. R. Evid. 702). Only then must a Court "satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006); *see also Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) ("Fed. R. Evid. 702 imposes on a district court a gatekeeper obligation to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'") (quoting *Daubert*, 509 U.S. at 589).

In "its gatekeeping role, the district court must make specific findings on the record so that the appellate court can determine if it carefully reviewed the objected-to expert testimony under the correct standard." *United States v. Stevenson*, 2022 WL 4368466, at *1 (E.D. Okla. Sept. 21, 2022) (citing, *inter alia*, *United States v. Cushing*, 10 F.4th 1055, 1079 (10th Cir. 2021)). "Reliability is about the reasoning and methodology underlying the expert's opinion. Relevance is about whether the expert testimony will assist the trier of fact or whether it instead falls within the juror's common knowledge and experience and will usurp the juror's role of evaluating a witness's credibility." *United States v. Wofford*, 766 Fed. Appx. 576, 581 (10th Cir. 2019) (internal citations and quotations omitted).

Factors for evaluating whether an expert's scientific testimony is reliable include: (i) whether a theory or technique can be (and has been) tested, (ii) whether it has been subject to peer review and publication, (iii) the known or potential rate of error, and (iv) whether such a theory or method has achieved "general acceptance" in the scientific community. *Daubert*, 509 U.S. at 593-594. Other factors helpful in identifying whether

evidence is sufficiently reliable are: (i) whether an expert is offering opinions arising out of research conducted independent of the litigation, or developed expressly for purposes of testifying, *see Daubert v. Merrell Dow Pharmaceuticals*, 43 F.3d 1311, 1317 (9th Cir. 1995); (ii) whether an expert unfairly extrapolates from an accepted premise to an unfounded conclusion, *see General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997); (iii) whether an expert adequately accounts for obvious alternative explanations, *see Claar v. Burlington N.R.R.*, 29 F.3d 499, 502-503 (9th Cir. 1994); (iv) whether an expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting[,]" *see Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997); and (v) whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give, *see Kumho Tire*, 526 U.S. at 150.  *See generally* Advisory Committee Notes to Fed. R. Evid. 702, 2000 Amendments.  These lists are not exclusive, as the Supreme Court reiterated in *Kumho Tire*: "[W]e can neither rule out, nor rule in, for all cases and for all time the applicability of the factors mentioned in *Daubert*, nor can we now do so for subsets of cases categorized by category of expert or by kind of evidence . . . the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his [or her] testimony."  526 U.S. at 150 [internal quotation omitted].  Further, the Tenth Circuit has stated that "the reliability criteria enunciated in *Daubert* are not to be applied woodenly in all circumstances."  *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009).

Treating physicians are often referred to as hybrid fact/expert witnesses, given the combined nature of their experiences treating a person along with their possession of training and skills necessary for being a physician.  "Both Federal Rules of Evidence 701 and 702 distinguish between expert and lay testimony, not between expert and lay witnesses.  Indeed, it is possible for the same witness to provide both lay and expert testimony in a single case." *United States v. Caballero*, 277 F.3d 1235, 1247 (10th Cir. 2002) (citation and footnotes omitted).  For instance, "a treating physician still acts as a lay witness [for purposes of the Federal Rules of Evidence] when testifying to his treating or caring for a patient." *Walker v. Spina*, 2019 WL 145626, at *19 (D. N.M. Jan. 9, 2019) (citation omitted).  "A treating physician's opinions regarding diagnosis of a medical condition is almost always expert testimony, because diagnosis requires judgment based on scientific, technical, or specialized knowledge in almost every case[.]  Diagnosing that a patient suffers from a complicated medical condition is expert testimony[.]" *Montoya v. Sheldon*, 286 F.R.D. 602, 614 (D. N.M. 2012).

In contrast, "[t]he credibility of witnesses is generally not an appropriate subject for expert testimony." *United States v. Toledo,* 985 F.2d 1462, 1470 (10th Cir. 1993); *see also United States v. Hill*, 749 F.3d 1250, 1263 (10th Cir. 2014) ("[O]ur court has clearly held that 'credibility [i]s for determination by the jury,' and '[a]n expert may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility[.]'") (quoting *United States v. Samara,* 643 F.2d 701, 705 (10th Cir. 1981) (quotation omitted)).  And this applies to expert testimony as to the credibility (or lack

thereof) of a defendant as well.  *See Hill*, 749 F.3d at 1260-1261 ("[T]he government argues that the foregoing Tenth Circuit cases establish a rule that it is impermissible for an expert to vouch *for* the credibility of a witness, but say nothing about an expert's opinion that a defendant is *not* credible. We disagree.").  Moreover, "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone."  Fed. R. Evid. 704(b).

## IV.    MOTION TO EXCLUE DR. MICHAEL BAXTER, D.O. (Docket No. 81)

Defendant challenges Dr. Baxter's qualifications to offer expert testimony on OI and EDS, and asserts that his methodology is not sufficiently reliable.  Dr. Baxter testified at the hearing on January 22, 2025, that he completed medical school as a Doctor of Osteopathy in 2005, and a residency in general pediatrics in 2008, followed by a fellowship in Child Abuse Pediatrics that concluded in 2010.  He has worked a faculty member in the Department of Pediatrics with the University of Oklahoma ("OU") since 2010.  He is Board Certified in both general pediatrics as well as child abuse pediatrics by the American Board of Pediatrics, and has evaluated thousands of children.  He is currently the program director for the Child Abuse Fellowship at OU.  *See* Govt. Hr'g Ex. 1 ("Curriculum Vitae").  Defendant concedes that Dr. Baxter is qualified to testify regarding a diagnosis of child abuse but contends Dr. Baxter lacks sufficient knowledge or expertise on OI and EDS, noting again the deficiencies contained within the Notice and Supplement.

-17-

Dr. Baxter testified that, as part of his training and practice, he learned about OI and had questions about it on both of his board certifications. He stated that his background in OI is part of his training and experience and referred to specific textbooks on the subject. He testified that a diagnosis would involve a physical exam, radiology, family history, and a genetic study. Upon questioning, Dr. Baxter stated that he has ruled out OI in other cases as part of a differential diagnosis, and that he has testified to such in previous cases. Dr. Baxter also testified that he is familiar with and has training in EDS and explained that he considered it a mimic for odd or unusual bruising in a child. Defense counsel asserts that Dr. Baxter is not an expert in EDS or OI, but the Government disagrees. Dr. Baxter testified that within his expertise of child abuse pediatrics, he is aware of EDS and OI but is not geneticist that studies either.

"[M]erely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001). However, "'the issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question.'" *Hoog v. Dometic Corp.*, 2024 WL 1234951, at *5 (W.D. Okla. Mar. 22, 2024) (quoting *Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1092-1093 (W.D. Okla. 2009) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)). "[C]ourts consistently have recognized that expert testimony need not be based solely upon scientific training[, specific certification,] or education; rather, an expert may be qualified in various ways." *Couture v. Bd. of Educ. of*

*Albuquerque Pub. Sch.*, 2007 WL 9734358, at \*4 (D. N.M. Mar. 28, 2007). Rule 702 explicitly provides that expert status may be based on "knowledge, skill, *experience*, training, or education." Fed. R. Evid. 702 (emphasis added). Indeed, "[w]hile scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *United States v. Frazier*, 387 F.3d 1244, 1260-1261 (11th Cir. 2004) (although an expert's *qualification* is not a guarantor of the discrete requirement of *reliability*).

Dr. Baxter has years of experiencing in treating and diagnosing cases of child abuse, including in relation to fractures, as well as in reviewing related medical records and in testifying about these cases as an expert. In training, treatment, and diagnosis, Dr. Baxter has experience in both EDS and OI specifically that allow him to discuss them as part of a differential diagnosis. "This distinguishes this case from *Sittig v. Louiville Ladder Group LLC*, 136 F. Supp. 2d 610, 616-617 (W.D. La. 2001), where deposition testimony revealed the experts knew little about ladders, and *Ralston*[ *v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001)] where the expert admitted to having no experience in the areas the Plaintiff sought to offer her testimony." *Heer v. Costco Wholesale Corp.*, 2014 WL 11621683, at \*3 (D.N.M. Jan. 13, 2014). Accordingly, the Court finds Dr. Baxter "is qualified by knowledge, skill, experience, training, or education to render an opinion." *Gutierrez de Lopez*, 761 F.3d at 1136. Furthermore, his expertise as a Board-Certified physician in pediatrics and child abuse pediatrics, who also treated Victim, is pertinent to this case because the government charged Defendant with child abuse. Any challenges to

Dr. Baxter go to weight of the testimony, rather than admissibility.  *See Rivera v. Volvo Cars of N. Am., LLC*, 2015 WL 11120738, at *4 (D.N.M. June 25, 2015) ("Any alleged flaws in Dr. Biffl's analysis of A.R.'s current condition or future prognosis go to the weight of her testimony, not its admissibility.") (citing *McCluskey*, 954 F. Supp. 2d at 1251 ("*Daubert* requires that factual determinations and flaws in application of generally reliable methodology are to be handled by cross-examination at trial and presentation of contrary evidence.").

Defendant also objects to the reliability of the opinions Dr. Baxter proffered at the *Daubert* hearing.  In preparation for the trial originally schedule for December 2024 and prior to his testimony at the January hearing, Dr. Baxter reviewed Victim's medical history, as well as both his own and other records.  Under Fed. R. Crim. P. 16, the Government was not required to submit an expert report detailing Dr. Baxter's methodology.  At the hearing, Dr. Baxter testified as to his general process for evaluating children for suspected child abuse.  He further testified that, based on the entirety of his exam of Victim in 2023 including the constellation of injuries presented, he diagnosed child physical abuse.

Defendant challenges not Dr. Baxter's diagnosis of child abuse but his expertise as to EDS and OI.  While Defendant is entitled to cross-examine Dr. Baxter as to his examinations, methodology, and analysis, Dr. Baxter will be permitted to offer these opinions because the records is now clear that he is qualified to do so.  *United States v. Woods*, 2022 WL 989477, at *3 (N.D. Okla. April 1, 2022) ("[The] description of Dr. Hines' methodology in combination with her unchallenged experience in child abuse

medicine is sufficient for the Court to exercise its gatekeeping function and determine that Dr. Hines' testimony is reliable enough to present to the jury. Defendant may cross-examine Dr. Hines on the specifics of her examination and analysis."); *see also Gutierrez de Lopez*, 761 F.3d at 1136 ("Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions. The jury is intelligent enough to ignore what is unhelpful in its deliberations.") (quotation omitted).  "[W]hen experts employ established methods in their usual manner, a district court need not take issue under *Daubert*[.]." *Attorney Gen. of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 780 (10th Cir. 2009).

Dr. Baxter's testimony will assist the trier of fact and has significant probative value, which is not outweighed by any danger of unfair prejudice.  "In assessing whether testimony will assist the trier of fact, district courts consider several factors, including whether the testimony 'is within the juror's common knowledge and experience,' and 'whether it will usurp the juror's role of evaluating a witness's credibility.'" *Gutierrez de Lopez*, 761 F.3d at 1136 (quoting *United States v. Garcia*, 635 F.3d 472, 476-477 (10th Cir. 2011)); *see also Rodriguez-Felix*, 450 F.3d at 1123 ("[T]he court will still consider other non-exclusive factors to determine whether the testimony will assist the trier of fact: (1) whether the testimony is relevant; (2) whether it is within the juror's common knowledge and experience; and (3) whether it will usurp the juror's role of evaluating a witness's credibility.  In essence, the question is 'whether [the] reasoning or methodology properly can be applied to the facts in issue.'") [internal citations omitted] (*quoting*

*Daubert*, 509 U.S. at 593). Having considered these factors, the Court finds that the proposed testimony by Dr. Baxter would be helpful to the jury in this case, as such issues are not within the common knowledge of a prospective juror. Dr. Baxter is therefore qualified as an expert, as well as a fact witness, in this case, and his testimony is both reliable and relevant.

Furthermore, Dr. Baxter's opinion was the product of reliable principles that were applied to the facts and evidence in this case as demonstrated by his testimony regarding his training and the textbooks he relied upon. While Dr. Baxter's CV and the Government's Notice and Supplemental Notice do not specifically elucidate the issues of expertise regarding EDS and OI,[5] Dr. Baxter's testimony demonstrated that his opinions were formed out of his skill set and knowledge base from an acknowledged medical subspecialty. When testifying about the Victim's injuries, his opinion regarding certain mimics to be considered in a differential diagnosis was based on scientific journals and his own experience and training as a physician. "*Daubert* generally does not[] regulate the underlying facts or data that an expert relies on when forming h[is] opinion." *United States v. Lauder*, 409 F.3d 1254, 1264 & n.5 (10th Cir. 2005). "In other words[,] when experts employ established methods in their usual manner, a district court need not take issue under

---

[5] Compare with *United States v. Bowen*, 2024 WL 2151703 (E.D. Okla. May 9, 2024), where Defendant's expert provided a supplement, Case No. CR-23-153-RAW, Docket No. 48, Ex. 1, containing Dr. Rothfeder's redacted expert report. While the Government's Notice there, Case No. CR-23-153-RAW, Docket No. 23, was no more helpful than the one in the present case, neither was their treating expert, Dr. Beeson, being offered as an expert in other impairments, unlike with Dr. Baxter in this case.

*Daubert;* however, where established methods are employed in new ways, a district court may require further indications of reliability." *Tyson Foods*, 565 F.3d at 780.

Furthermore, the Court finds that Dr. Baxter's opinions as to Victim's differential diagnosis is within the parameters of Fed. R. Evid. 704, which only commands an expert to be silent "concerning *the last step in the inferential process* – a conclusion as to the defendant's *actual mental state.*" *United States v. Garcia-Martinez*, 730 Fed. Appx. 665, 682-683 (10th Cir. 2018) ("But Agent Cronin's testimony stopped short of necessarily dictating the final conclusion that Garcia-Martinez possessed the requisite *mens rea* for conspiracy to possess and possession with intent to distribute heroin and methamphetamine.") (quotations omitted) (*citing, inter alia*, *United States v. Goodman*, 633 F.3d 963, 970 (10th Cir. 2011) ("As we have explained, Rule 704(b) *only* prevents experts from expressly stating the final conclusion or inference as to a defendant's mental state. The rule does not prevent the expert from testifying to facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state.") (quotations omitted). Dr. Baxter offers no opinion as to the Defendant's state of mind, and the Government is aware that it may not substitute his opinion for the requisite *mens rea* of the crimes charged. *Cf. United States v. Moya*, 5 F.4th 1168, 1189 (10th Cir. 2021) ("But none of the experts testified about Moya's mental state. Rather, their opinions focused on the cause of Cameron's death. Though that was undoubtedly an 'ultimate issue' and an element the government needed to prove, nothing in the federal rules forbids an expert from offering an opinion on that kind of factual determination.").

The Court therefore finds that Dr. Baxter's proposed testimony will assist the trier of fact. *See Gutierrez de Lopez*, 761 F.3d at 1136 (quoting *Garcia*, 635 F.3d at 476-477); *see also Rodriguez-Felix*, 450 F.3d at 1123 (quoting *Daubert*, 509 U.S. at 593). Dr. Baxter's proposed testimony would be helpful to the jury in this case, as such issues are not within the common knowledge of a prospective juror. *See Gutierrez de Lopez*, 761 F.3d at 1136 ("Ultimately [] expert testimony is admissible under Rule 702(a) if it will simply help the trier of fact to understand the facts already in the record, even if all it does is put those facts in context."). Defendant is entitled, however, to cross-examine Dr. Baxter as to his methodology and analysis. *Woods*, 2022 WL 989477, at *3 ("Defendant may cross-examine Dr. Hines on the specifics of her examination and analysis."); *Gutierrez de Lopez*, 761 F.3d at 1136 ("Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions. The jury is intelligent enough to ignore what is unhelpful in its deliberations."); *United States v. White*, 2022 WL 2809786, at *2 (E.D. Okla. July 18, 2022) ("So long as the witness does not in any way 'vouch' for another witness's credibility, the court is persuaded the jury's function in this regard is not usurped. While the testimony will be admitted, there is fertile ground for cross-examination by defense counsel."). In any event, "[d]oubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusion." *Gutierrez de Lopez*, 761 F.3d at 1136. Here, the Court finds that Dr. Baxter's expert testimony is reliable and relevant, and he should

-24-

therefore be permitted to testify as an expert as to the proffered opinions, as well as a fact witness.

### V.     Conclusion

In summary, Defendant's Motion to Strike, or in the Alternative, Objection to Government's Notice to the Court and Supplemental Notice of Intent to Offer Expert Witness [Docket No. 80] and Motion to Exclude Expert Testimony of Dr. Michael Baxter Pursuant to Fed. R. Evid. 702 and Brief in Support [Docket No. 81] is GRANTED to the extent a hearing was held on January 22, 2025, and otherwise DENIED.

IT IS SO ORDERED this 29th day of January, 2025.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**